**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CARSUNDRA RIDGEWAY,

Plaintiff,

-v- 5:26-CV-31 (AJB/PJE)

SYRACUSE POLICE,

Defendant.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

## I. INTRODUCTION

On November 21, 2025, *pro se* plaintiff Carsundra Ridgeway ("plaintiff") commenced this action against the Syracuse Police Department ("Syracuse Police" or "defendant") in New York State Supreme Court, Onondaga County. *See* Dkt. No. 2 ("Compl."). Plaintiff's complaint alleges that defendant engaged in harassment and misconduct against her in connection with the February 12, 2016, shooting death of her daughter by Syracuse police officers.[1] *See id.*

On January 7, 2026, defendant removed the action to federal court. *See* Dkt. No. 1. Thereafter, defendant answered the complaint, Dkt. No. 5, and moved for a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 24. Plaintiff has opposed. Dkt. No. 27. After defendant replied, Dkt. No. 28, plaintiff filed a motion styled as a "wrongful death" motion, Dkt. No. 33, which defendant has since opposed, Dkt. No. 35.

---

[1] Plaintiff previously commenced an action in this district arising from that shooting, which then-Chief United States District Judge Glenn Suddaby dismissed on summary judgment in February 2019. *See Ridgeway v. City of Syracuse*, 2019 WL 416148 (N.D.N.Y. Feb. 1, 2019).

Both motions are fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are drawn from plaintiff's complaint, Dkt. No. 2, and, to the extent consistent with the complaint, plaintiff's subsequent submissions, as well as Judge Suddaby's February 1, 2019 summary judgment decision in *Ridgeway*, 2019 WL 416148, of which the Court takes judicial notice. *See Sullivan v. Hyland*, 647 F. Supp. 2d 143, 148 (D. Conn. 2009) ("[B]ecause this case turns on facts that have been the subject of several prior actions, it is proper and indeed incumbent upon this Court to take judicial notice of the opinions in those prior cases."); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360–61 (2d Cir. 2021) (permitting consideration of judicially noticeable records from prior litigation in resolving a motion to dismiss on *res judicata* grounds). The allegations in plaintiff's complaint and subsequent submissions are assumed to be true for purposes of resolving the pending motions.

On February 12, 2016, plaintiff's daughter, Sahlah Ridgeway ("Sahlah"), was shot and killed during an encounter with Syracuse Police Department officers. *See Ridgeway*, 2019 WL 416148, at *1–8. According to the undisputed record developed in the prior litigation, the shooting occurred after Officers Darrin Ettinger and Jeremy Decker responded to a report of suspected drug activity at an apartment building in Syracuse, New York. *Id.* at *2. Sahlah fled from the officers while carrying a shotgun and failed to comply with their commands to stop and drop the weapon. *Id.* at *4. After Sahlah turned toward the officers while appearing to manipulate the shotgun, Ettinger shot and killed her. *Id.* at *5–6.

On May 26, 2016, plaintiff, through counsel, commenced an action in this district against the City of Syracuse, Ettinger, Decker, and other unnamed officers arising from the shooting. *See*

*Ridgeway v. City of Syracuse*, No. 5:16-CV-618 (N.D.N.Y.) (the "2016 Action"). Plaintiff's complaint asserted eight causes of action, including claims under 42 U.S.C. § 1983 for excessive force and deliberate indifference to Sahlah's medical needs, as well as state-law claims for assault, battery, negligent entrustment, negligent hiring and training, and wrongful death. *See Ridgeway*, 2019 WL 416148, at *1–2. Plaintiff also brought a municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of Syracuse. *Id.* Plaintiff's attorney later withdrew from the action, Dkt. No. 29, and plaintiff elected to proceed *pro se*, Dkt. No. 31.

On February 1, 2019, Judge Suddaby granted defendants' motion for summary judgment and dismissed the complaint in its entirety. *See Ridgeway*, 2019 WL 416148, at *15. Among other things, Judge Suddaby concluded that Ettinger's use of deadly force was objectively reasonable under the circumstances because the undisputed evidence established that Sahlah possessed a shotgun, disregarded the officers' commands, and appeared to be preparing to manipulate the safety on the shotgun when she turned toward Ettinger. *Id.* at *11–12. Judge Suddaby further concluded that plaintiff had failed to establish a viable claim for wrongful death or any other constitutional or state-law violation. *Id.* at *12–15.

Over six years later, on November 21, 2025, plaintiff, still *pro se*, commenced this action against the Syracuse Police Department in New York State Supreme Court, Onondaga County. *See* Compl. Although plaintiff's handwritten complaint does not identify a specific cause of action, plaintiff alleges that defendant has engaged in a years-long pattern of harassment, intimidation, and interference with her personal life. *See id.*

Specifically, plaintiff alleges that the police have deprived her of her freedom and exposed private information about plaintiff to others. *See* Compl. at 1. Plaintiff further alleges that defendant stole her phone and subsequently denied possessing it, interfered with her access to the internet,

and installed video cameras in her apartment, including in her bathroom. *Id.* at 1–2. According to plaintiff, the police have also placed "harmful things" in her apartment "to make [her] sick" and have interfered with her mail. *Id.*

Plaintiff also alleges that defendant has interfered with her relationships, housing, and employment. *See* Compl. at 2. In particular, plaintiff alleges that the police prevented prospective landlords from renting to her for more than one year and arranged for a man named Marc Williams to enter into a romantic relationship with her. *Id.* Plaintiff contends that Williams physically assaulted her and that the police placed foreign objects inside her body. *Id.* Plaintiff also alleges that the police have prevented her from getting a job. *Id.*

Plaintiff traces this alleged series of events to the circumstances surrounding her daughter's death. *See* Compl. at 2. She alleges that the police killed Sahlah on February 12, 2016, and are now "after" plaintiff and plaintiff's younger brother. *Id.* In subsequent submissions to this Court, plaintiff disputes the police officers' account of the shooting, maintaining that Sahlah was unarmed and that forensic evidence demonstrates that she did not possess the shotgun recovered by police after the shooting. *See* Dkt. Nos. 14, 15, 27. Plaintiff has submitted various documents in support of that contention, including firearm trace records, news articles about Sahlah's death, and a forensic laboratory report. *See generally id.*

## III. LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). Dismissal for failure to state a claim upon which relief can be granted "can be based on one or both of two grounds: (1) a challenge to the 'sufficiency of the pleading' under [Rule] 8(a)(2); or (2) a challenge to the legal cognizability

of the claim." *Gibson v. New York State Off. of Mental Health*, 372 F. Supp. 3d 23, 28 (N.D.N.Y. 2019) (Suddaby, C.J.) (internal citations omitted).

In deciding a motion for judgment on the pleadings, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation omitted).

## IV. DISCUSSION

As an initial matter, plaintiff is *pro se*. As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013). This liberal construction is grounded in the recognition that *pro se* litigants, by virtue of their lack of legal training, are more likely to forfeit important rights inadvertently. Accordingly, courts must "make reasonable allowances" to protect such litigants from the consequences of procedural missteps. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

That said, the Court's solicitude toward *pro se* litigants is not without limits. The Second Circuit has made clear that "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

With those principles in mind, the Court turns first to defendant's motion for judgment on the pleadings and then to plaintiff's wrongful death motion.

**A. Defendant's Motion for Judgment on the Pleadings**

On July 13, 2026, defendant moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 24. Defendant argues that plaintiff has failed to state a cognizable claim for relief, that the Syracuse Police Department lacks the capacity to be sued independent of the City of Syracuse, and that plaintiff's claims are barred by *res judicata*, *i.e.*, claim preclusion, in light of the dismissal of the 2016 Action. *See* Dkt. No. 24-7 ("Def.'s Mem."). Plaintiff opposes the motion, Dkt. No. 27, and defendant has filed a reply, Dkt. No. 28.

**1. Claim Preclusion**

First, defendant argues that dismissal is warranted under the doctrine of *res judicata*. Def.'s Mem. at 12–14. "*Res judicata* assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995). "Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (emphasis in original)).

To establish that claim preclusion applies, a defendant must demonstrate that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

In determining whether two actions involve the same claims, courts consider "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the

first." *TechnoMarine SA*, 758 F.3d at 499 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)). Thus, claim preclusion may apply even where the subsequent action asserts different legal theories or seeks different relief. *See Monahan*, 214 F.3d at 289–290. However, "a claim arising subsequent to a prior action . . . [is] not barred by *res judicata* even if the new claim is premised on facts representing a continuance of the same 'course of conduct.'" *TechnoMarine SA*, 758 F.3d at 499 (cleaned up) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003)).

Defendant argues that the dismissal of plaintiff's 2016 Action has a claim-preclusive effect on this action. According to defendant, both actions involve the same parties and allege the same facts, *i.e.*, that the Syracuse Police Officers used unlawful force against Sahlah. Def.'s Mem. at 12–14. Defendant further argues that the dismissal of the 2016 Action on summary judgment qualifies as a final judgment on the merits. *Id.* at 12.

First, the Court agrees that the 2016 Action resulted in a final judgment on the merits. *See Ridgeway*, 2019 WL 416148, at *15. Judge Suddaby considered and rejected plaintiff's contention that the officers had used excessive force against Sahlah, concluding that Sahlah "appeared to be readying to use the shotgun at the time she stopped and turned toward Defendant Ettinger," and that Ettinger's use of his weapon was thus "objectively reasonable under the circumstances." *Id.* at *11–12.

Moreover, although plaintiff appealed the February 1, 2019 summary judgment decision, the Second Circuit dismissed her appeal for failure to pay the filing fee, subject to reinstatement if she paid the fee or sought leave to proceed *in forma pauperis* by March 19, 2019. *See* Dkt. No. 24-1 ("Landsberg Decl.") at ¶ 27; Dkt. No. 24-6. The record does not suggest that plaintiff took either of those steps. In any event, the pendency of an appeal does not alter the preclusive effect

of an otherwise final judgment. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941). For those reasons, the 2019 judgment remains final, and plaintiff cannot circumvent its claim-preclusive effect by commencing a new action challenging the same underlying conduct. Accordingly, there can be little question that the 2016 Action resulted in an adjudication on the merits.

The remaining requirements warrant a closer look. Although the Syracuse Police Department was not itself named as a defendant in the 2016 Action, the City of Syracuse and the officers responsible for Sahlah's death were parties to that litigation. As the Second Circuit has explained, "literal privity is not a requirement for res judicata to apply." *Monahan*, 214 F.3d at 285. Rather, the privity analysis is a "functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Chase Manhattan*, 56 F.3d at 346. The defendants in the 2016 Action included the City of Syracuse and Officers Ettinger and Decker, whereas plaintiff now names the Syracuse Police Department, an administrative arm of the City. *See Ridgeway*, 2019 WL 416148, at *1. Thus, notwithstanding the difference in named defendants, the Court is satisfied that the requisite relationship exists between the defendants in the two actions.[2]

Next, plaintiff's present submissions appear to reiterate her contention that the officers lacked justification for using deadly force against Sahlah, an issue that was central to the prior litigation. *See, e.g.*, Dkt. No. 27 at 1 ("The officers in question shot and killed an innocent young woman on a drug call. [S]he wasn't found with any drugs on her person or any weapons."). During

[2] It bears mentioning that plaintiff brought the 2016 Action as administrator of Sahlah's estate, whereas she appears to bring the present action in her individual capacity. *See Ridgeway*, 2019 WL 416148, at *1; Restatement (Second) of Judgments § 36(2) (explaining that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."). Nevertheless, to the extent plaintiff seeks to relitigate claims belonging to Sahlah's estate, those claims are barred by the prior judgment. Any claims arising from injuries belonging to plaintiff herself will be considered separately below.

the parties' June 10, 2026 conference in this case, plaintiff answered in the affirmative when Judge Evangelista asked whether she was alleging that Syracuse police officers had used excessive force in wrongfully killing her daughter, thereby depriving plaintiff of financial support and adversely affecting her health. Dkt. No. 23 ("Tr.") at 5–6 (Q: "[A]re you telling me that the Syracuse Police . . . used excessive force, wrongly killed . . . your daughter and that deprived you of your . . . health[?]" / A: "Yes."). To the extent plaintiff seeks to pursue claims on behalf of Sahlah's estate arising from the February 12, 2016 shooting, those claims concern the same underlying transaction that formed the basis of the 2016 Action and were previously adjudicated on the merits.

However, the present complaint also includes allegations of misconduct distinct from the shooting itself. In particular, plaintiff alleges that defendant has surveilled her residence, interfered with her ability to obtain housing and employment, and subjected her to various forms of harassment. *See* Compl. at 1–3. Although plaintiff appears to attribute this alleged conduct to her daughter's death, the complaint does not clearly establish when each incident occurred or whether the alleged conduct was at issue in the 2016 Action.

Accordingly, although the prior judgment bars plaintiff from relitigating claims which were already litigated in the 2016 Action, the Court is not persuaded that defendant has established that *res judicata* independently bars *every* allegation in the 2026 complaint. The Court therefore turns to whether plaintiff has otherwise stated a claim upon which relief can be granted.

**2. Failure to State a Claim**

On that issue, defendant argues that "based on either Rule 8 pleading sufficiency or legal cognizability, . . . [p]laintiff fails to state a cause of action upon which she can recover against [d]efendant." Def.'s Mem. at 7.

A pleading is generally sufficient where it contains "a *short and plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphases added). Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era"; however, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff must provide "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. The Court must construe the allegations in the complaint with leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Even affording the complaint the special solicitude to which it is entitled, plaintiff has failed to state a plausible claim for relief. As discussed above, plaintiff alleges that defendant has engaged in various forms of harassment and misconduct. *See* Compl. at 1–3. However, plaintiff offers few factual allegations identifying the individuals responsible for the alleged misconduct, describing the circumstances in which it occurred, or explaining how the conduct is attributable to defendant. For example, although plaintiff alleges that the police have prevented landlords from renting to her, she does not identify any particular landlord with whom defendant allegedly

interfered or describe any actions undertaken by police officers to prevent her from securing housing. Similarly, plaintiff's allegations concerning surveillance and physical harm are largely unsupported by factual details that would permit the Court to infer that plaintiff is entitled to relief.

Although plaintiff does not identify any specific legal basis for her claims, the Court has considered whether her allegations could, liberally construed, state a claim under 42 U.S.C. § 1983. Section 1983 establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Here, plaintiff's allegations do not plausibly establish that defendant, or any identifiable individual acting under color of state law, violated her constitutional rights. Nor, to the extent the complaint may be construed as asserting claims against the City of Syracuse, does plaintiff allege facts demonstrating that any purported constitutional violation resulted from an official municipal policy or custom. *See Monell*, U.S. at 694.

To the extent plaintiff's complaint may be construed as asserting claims under New York law, the Court declines to exercise supplemental jurisdiction over those claims. Although plaintiff's allegations *could* conceivably implicate various state-law torts, including assault, battery, trespass, tortious interference with economic relations, conversion or trespass to chattels, and intentional infliction of emotional distress, the Court need not determine whether plaintiff has plausibly alleged any state-law claim.

Having dismissed plaintiff's federal claims, the Court will not retain jurisdiction over any remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

The Court is once again mindful that plaintiff is proceeding *pro se* and that her complaint must be interpreted to raise the strongest claims it suggests. Construing plaintiff's allegations liberally and having considered the additional information provided in her subsequent submissions, however, the Court cannot reasonably infer from the facts alleged that defendant is liable for any legally cognizable violation of plaintiff's rights. Accordingly, plaintiff has failed to state a claim upon which relief can be granted.

**3. The Syracuse Police Department's Capacity to Be Sued**

Finally, the defendant argues that it cannot be sued as an independent entity and that plaintiff's failure to name the proper defendant provides an independent basis for dismissal. Def.'s Mem. at 10–11.

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Jenkins v. Liadka*, 2012 WL 4052286, at *9 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself."). Accordingly, the Syracuse Police Department is not independently amenable to suit.

Nevertheless, given plaintiff's *pro se* status, the Court could construe the complaint as asserting claims against the City of Syracuse. *See Morris v. N.Y.C. Police Dep't*, 59 F. App'x 421,

422–23 (2d Cir. 2003) (summary order) (directing district court to permit *pro se* plaintiff to amend complaint to name the proper municipality in place of police department). As discussed above, however, plaintiff has failed to plausibly allege that any constitutional violation resulted from a qualifying municipal policy or custom. See *Jenkins*, 2012 WL 4052286, at *9–10 (dismissing claims against the Syracuse Police Department and City of Syracuse where plaintiff failed to allege a municipal policy or custom responsible for the alleged constitutional violations). For that reason, construing the complaint as asserting claims against the City does not cure its substantive deficiencies.

**4. Leave to Amend**

Finally, the Court has independently considered whether plaintiff should be afforded an opportunity to amend her complaint. Although "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend," "leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 Fed. App'x. 47, 49 (2d Cir. 2013) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, plaintiff has submitted several additional filings elaborating on her allegations. Upon careful review, the Court finds that none of those additional filings suggest that plaintiff could cure the deficiencies identified above. Moreover, plaintiff's claims arising from the February 2016 shooting are barred by the doctrine of *res judicata*, a fundamental defect that cannot be remedied through more detailed pleading. Accordingly, the Court concludes that granting leave to amend would be futile.

**B. Plaintiff's Motion for Wrongful Death**

After responding to defendant's motion for judgment on the pleadings, plaintiff filed another motion styled as a "wrongful death" motion, seeking monetary compensation for pain and

suffering and changes to the Syracuse Police Department's training and use of force practices, specifically, "retraining police officer[s] [in] less harmful ways to apprehend a [p]erson." Dkt. No. 33; *see also* Dkt. No. 33-1 ("I make this Affidavit . . . to have the Police trained to use less force on individuals, also to use bean bags instead of bullets to put a subject down and inversement [*sic*] for my loss."). Defendant opposes the motion, construing it as seeking preliminary injunctive relief or, in the alternative, summary judgment with permanent injunctive relief and damages. *See* Dkt. No. 35-1.

In light of the Court's conclusion that defendant is entitled to judgment on the pleadings and that plaintiff's complaint must be dismissed, the Court need not determine how best to construe plaintiff's motion. Because no viable claims remain upon which the requested relief could be granted, plaintiff's motion will be denied as moot. *Cf. Nesselson v. McDonald*, 2026 WL 2212888, at *10 (S.D.N.Y. July 31, 2026) (denying motion for preliminary injunction as moot following dismissal of complaint); *Principle Homecare, LLC v. McDonald*, 2025 WL 622876, at *17 (S.D.N.Y. Feb. 26, 2025) (same), *aff'd*, 158 F.4th 326 (2d Cir. 2025); *AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 755 (2d Cir. 2010) ("[I]f we conclude that a case is moot, we lack jurisdiction to hear it.").

Moreover, plaintiff states that she filed her "wrongful death motion" because "the Syracuse Police Officer Darrin Ettinger and Jeremy Decker shot and killed [her] daughter on Feb. 12, 2016." Dkt. No. 33-1 at 2. To the extent this motion might be understood as an attempt to relitigate her daughter's death, those claims are barred by the doctrine of *res judicata* for the reasons explained above.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendant's motion for judgment on the pleadings (Dkt. No. 24) is **GRANTED**;

2. The Clerk of Court is directed to terminate the Syracuse Police Department as a defendant and substitute the City of Syracuse in its place;

3. To the extent plaintiff's complaint asserts federal claims, those claims are **DISMISSED** with prejudice and without leave to amend;

4. To the extent plaintiff's complaint asserts claims under New York law, those claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3) and remanded to New York State Supreme Court, Onondaga County;

5. Plaintiff's motion for wrongful death (Dkt. No. 33) is **DENIED** as moot.

The Clerk of the Court is directed to terminate the pending motion, enter judgment accordingly, and close the case. The Clerk is further directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 9, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge